UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| REBECCA FLORES | * | CIVIL ACTION |
| VERSUS | * | NO. 23-3225 |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION | * * | SECTION "A" (2) |

## REPORT AND RECOMMENDATION

Plaintiff Rebecca Flores seeks judicial review pursuant to section 405(g) of the Social Security Act ("the Act") of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying in part her claim for disability insurance benefits ("DIB") under Title II of the Act.[1]  Pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B), this matter was referred to the undersigned United States Magistrate Judge for submission of Findings and Recommendations.

## I.    PROCEDURAL HISTORY

Rebecca Flores is now a 51-year-old woman who filed an application for DIB with an original alleged disability onset date of March 18, 2020 and an amended alleged onset date of May 9, 2022.  *See* Administrative Record (hereinafter, "Rec.") at 41-42, 209.  She has a 12th grade education.  *Id*. at 44.  Her relevant work history includes employment as a bakery assistant and daycare worker.  *Id*. at 45-46, 229.  She does not drive and has never had a driver's license.  *Id*. at 49. Her age classification was that of a "younger person" at the time of her amended onset date, May 9, 2022.  Flores turned 50 years old on November 9, 2022, and thus became classified as a "person closely approaching advanced age."  20 C.F.R. § 404.1563(c)-(d).  She alleges disability

---

[1] 42 U.S.C. §§ 405(g), 423.

due to, *inter alia*, vasculitis, Wegener's granulomatosis, L4 radiculopathy, interstitial lung disease, morbid obesity, high blood pressure, and high cholesterol. *Id*. at 228, 314-16.

Flores applied for DIB on January 12, 2021. Rec. at 209-10. Her application was denied at the agency level on August 5, 2021. *Id*. at 64, 66-77. Plaintiff requested reconsideration on October 5, 2021. *Id.* at 89-90. Her application was again denied on March 22, 2022. *Id*. at 84, 78-83. Flores filed a request for a hearing before an Administrative Law Judge ("ALJ"). *Id*. at 104-05. ALJ David Benedict heard the matter on February 14, 2023. *Id.* at 32-63. Flores appeared and testified at the hearing and was represented by counsel, Adam Meunier. *Id*. at 33. Jack Arouca, an impartial vocational expert, also appeared and testified. *Id*. at 55-61.

On March 15, 2023 ALJ Benedict issued a decision granting in part and denying in part Flores' application for DIB. Rec. at 7-27. Plaintiff filed a request for review by the Appeals Council on March 23, 2023. *Id*. at 207-08. After granting a request for additional time, the Appeals Council denied Plaintiff's request for review on June 30, 2023, rendering the ALJ's decision the final decision of the Commissioner for purposes of this Court's review. *Id*. at 1-3, 28. Flores filed this action on August 8, 2023. ECF No. 1.

## II.    STATEMENT OF ISSUES ON APPEAL

Flores identifies two issues for appeal:

(1) The ALJ committed reversible error at Step 3 by neglecting to conduct an analysis of whether the Plaintiff medically equaled Listings 3.02 A or B. Further, the Commissioner's ruling [17-2p] requiring medical testimony at the ALJ level is unconstitutional per the U.S. Supreme Court.

(2) The ALJ committed reversible error by applying the age categories mechanically when the evidence and overall factors of her case established an onset of 5/9/22, 6 months prior to the plaintiff's 50th birthday. Further, the Commissioner's interpretation of 20 C.F.R. § 404.1563(b) [HALLEX I-2-2-42(B)(1) is unconstitutional per the U.S. Supreme Court.[2]

---

[2] ECF No. 9-1 at 5.

**III.    <u>ALJ's FINDINGS RELEVANT TO ISSUES ON APPEAL</u>**

The ALJ made the following relevant findings in his ruling:

1.   The claimant meets the insured status requirements of the Social Security Act through September 30, 2024.

2.   The claimant has not engaged in substantial gainful activity since May 9, 2022, the amended alleged onset date (20 CFR 404.1571, *et seq*.).

3.   Since the amended alleged onset date of disability, May 9, 2022, the claimant has had the following severe impairments: interstitial lung disease, Wegener's granulomatosis, osteoarthritis of the knees, fibromyalgia, gastroesophageal reflex disease (GERD), vasculitis, and obesity (20 CFR 404.1520(c)).

4.   Prior to October 27, 2022, the date the claimant became disabled, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5.   After careful consideration of the entire record, the undersigned finds that prior to October 27, 2022, the date the claimant became disabled, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she was able to lift and carry ten pounds on a maximum sustained basis (occasionally and frequently), stand and walk for a total of two hours in an eight-hour day, and sit for six hours in an eight-hour day. The claimant needed to avoid moderate (no more than occasional) exposure to atmospheric conditions (fumes, odors, dust, mist, gases, and poor ventilation).

6.   Since May 9, 2022, the claimant has been unable to perform any past relevant work (20 CFR 404.1565).

7.   The claimant was born on November 9, 1972 and was 49 years old, which is defined as a younger individual, age 45-49, on the amended alleged onset date. The claimant's age category had not changed as of the established onset date, October 27, 2022 (20 CFR 404.1563).

8.   The claimant had at least a high school education (20 CFR 404.1564).

9.   Prior to October 27, 2022, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Prior to October 27, 2022, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the

national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a).

11. Since October 27, 2022, the severity of the claimant's impairments has met the criteria of section 3.02 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 404.1525).

12. The claimant as not disabled prior to October 27, 2022 (20 CFR 404.1520(g),), but became disabled on that date and has continued to be disabled through the date of her decision. Her disability is expected to last twelve months past the onset date (20 CFR 404.1520(d)).

Rec. at 12-20.

## IV.    FACTUAL BACKGROUND

Flores applied for DIB on January 12, 2021, alleging disability commencing on March 18, 2020. Rec. at 209. Her Disability Report dated January 12, 2021, indicates that she stopped working during the COVID-19 epidemic on March 18, 2020, because of her health conditions and high risk of contracting the virus due to autoimmune disease and chemotherapy treatments. *Id*. at 228; *see also id.* at 227-34. In her Functions Reports dated April 13, 2021 and February 10, 2022, she described lower back problems, muscle spasms, shooting pain in her legs and upper thighs, numbness, and acid reflux. *Id*. at 255-62; 279-86.

Flores indicated she lives with her family and takes care of her children and two pets. *Id*. at 280. She prepares meals for herself and her family, cleans, does laundry, and takes care of her personal needs on her own. *Id*. Her children and husband take care of yard work and her sisters and husband usually bring her groceries, though she goes to the store herself if necessary. *Id*. at 281-82. Her husband manages all of their finances. *Id*. She watches movies and plays board games with her children. *Id*. She indicates that her health conditions do not prevent her from enjoying her hobbies and interests, they just slow her down. *Id*. She can lift 5 to 10 pounds and walk a block and a half before resting for 10 minutes. *Id.* at 284. She follows written and spoken

instructions well, gets along with authority figures, and manages stress and routine changes "ok." *Id*. at 284-85.  She does not use any assistive devices.  *Id*.

A. **Plaintiff's Hearing Testimony**

At the February 14, 2023 hearing, Flores testified that she was 50-years old (now 51) with a high school education.  Rec. at 44-45.  Her job history includes work as a baker's assistant and daycare assistant and teacher.  *Id*. at 45-46.  Flores has not worked since her amended alleged onset date, May 9, 2022.  *Id*. at 46.  Flores testified that completing simple household tasks is made difficult by her lung condition because she has trouble breathing.  She also has trouble speaking for extended periods of time because she runs out of breath, after which she has to take a 15-to-20 minute break to get her breathing under control. She testified that, while she does not currently use oxygen, she will soon need a lung transplant.  She cannot walk through a grocery store without stopping to catch her breath multiple times.  Flores also testified that heat and cold affect her breathing, so she cannot spend time in extreme temperatures.  Her symptoms began to worsen in 2021.  *Id*. at 47-49.

Flores does not have a driver's license because she is afraid to drive. She lives with her husband, who drives her around when necessary.  She does not have a bank account.  When she goes shopping, she pays in cash provided by her husband or uses his debit card.  *Id*. at 50.  She last worked in 2020.  Flores stopped working at the grocery store because it was too difficult to lift 50-pound buckets of baking ingredients on a daily basis.  At that point, she started to work at a daycare center.  *Id*. at 52.

Flores testified that she receives chemotherapy infusions every six months for her granulomatosis.  *Id*. at 53.  In April of 2020, she had 2-to-3 bad days every week, on which days

she had to lay down and put cold compresses on her back, knee, and hands. She would alternate between sitting laying down and standing. *Id*.

**B. Vocational Expert Testimony**

Vocational expert ("VE"), Jack Arouca also testified at the hearing. Arouca agreed to advise the court if any of his opinions conflicted with the Dictionary of Occupational Titles ("DOT"). *Id*. at 55. Plaintiff's counsel stipulated to Arouca testifying as an expert at the hearing. *Id*. at 56. After asking Flores follow-up questions about her past work, Arouca classified her grocery store job as "baker helper," DOT code 526.686–010, strength level heavy, SVP two. He classified her daycare job as "nursery school attendant," DOT code 359.677–018, strength level light, SVP four, semiskilled. *Id*. at 58. The VE opined that there were no transferable skills from the nursery school attendant position to sedentary positions.

ALJ Benedict posed two hypotheticals. *Id*. The first hypothetical individual had the same age, education, and work experience as the plaintiff, could lift 20 pounds occasionally, 10 pounds frequently, stand and walk a total of six hours in an eight hour workday, sit six hours in an eight hour workday, and must avoid moderate exposure to atmospheric conditions, such as fumes, odor, dust mist, gasses, and poor ventilation. The expert testified that such an individual could perform the duties of nursery school attendant. *Id*. at 58-59. Altering the hypothetical, the ALJ described an individual who could lift and carry 10 pounds on a maximum sustained basis, stand and walk a total of two hours in an eight hour workday, sit six hours in an eight hour workday, and must avoid exposure to the same atmosphere conditions. *Id*. at 59. The expert testified that such an individual would be limited to sedentary level occupations including, for example, order clerk (DOT 209.567–014, sedentary, SVP two, 1000 jobs in the national economy), charge account clerk (DOT 205.367–014, 2200 jobs in the national economy), and ticket checker, (DOT 219.587–010,

sedentary, SVP two, 93,000 jobs in the national economy). *Id*. at 60. He testified that his testimony was consistent with the DOT. *Id*. Plaintiff's counsel asked the VE to modify either of the first two hypotheticals with the same restrictions, adding that the individual would require occasional breaks in order to regain functionality, which breaks would take the individual off task 15% of the workday in addition to ordinary breaks. *Id*. at 60-61. The VE testified that such an individual could not perform Flores' past jobs, or any jobs in the national economy, with the necessity for additional breaks of the type described. *Id.* at 61. In reaching this conclusion, the VE relied on his education, training, and work experience, noting that the DOT does not elaborate on the degree of off task behavior in the job analysis. *Id*. at 61.

**C.  Medical Evidence**

I have reviewed the medical records and the ALJ's summary of the medical evidence. Rec. at 321-621. The ALJ's summary of the medical evidence is substantially correct and is incorporated herein by reference, with the modifications, corrections and highlights noted below.

**D.  The Appeal**

**1.  Step 3 Equivalence Finding**

Flores argues that the ALJ summarily concluded that Flores failed to meet her burden of proof because no designated medical source made findings regarding equivalence and failed to conduct an analysis of whether she medically equaled Listings 3.02 A or B, committing reversible error at Step 3. ECF No. 9-1 at 5-6. Flores asserts that it the ALJ is solely responsible, not a "designated medical source," to determine equivalence, and the ALJ should have found medical equivalence based on the record evidence demonstrating a combination of impairments that could have equaled Listings. *Id*. Flores highlights her severe impairments of L4 radiculopathy, Wegener's granulomatosis, severe interstitial lung disease, and morbid obesity, which conditions

"include many of the requirements of Listing 1.15(B), namely sensory loss and motor weakness." *Id.* at 6.

Flores further asserts that on her amended alleged onset date of May 9, 2022, she fell and fractured her ankle, which exacerbated her back and radicular pain. *Id*. at 6-7.  She argues that the medical evidence reflects a worsening of her pulmonary and rheumatological impairments approximate to the alleged onset date.  *Id*. at 7-8.  Given this evidence, Flores argues, a finding of medical equivalence "would certainly have been reasonable" and the ALJ erred in failing to conduct an evidentiary analysis, which was solely his responsibility under 20 C.F.R. § 404.1526(e)(3).  *Id*. at 8.  Flores requests reversal and remand so that the ALJ may appropriately conduct the medical equivalence analysis.  *Id*. at 8-9.

In opposition, the Commissioner argues that Plaintiff has failed to carry her burden at Step 3; hence a finding of medical equivalence was unsupported by the record.  ECF No. 11 at 5.  The Commissioner disputes Plaintiff's argument that the ALJ premised his equivalence analysis solely on the fact that no acceptable medical source concluded that Flores' impairments equaled a listing and asserts that the plain text of the ALJ's decision reflects both a conclusion that Flores neither met nor equaled a listing and that no medical source found medical equivalence.  *Id*. at 8-9.   Step 3 equivalence findings, the Commissioner argues, are subject to a more demanding standard than the statutory definition of disability because listings involve the inability to perform *any* gainful employment, whereas the statutory definition involves substantial gainful activity.[3]   The Commissioner contends that the ALJ did consider objective medical evidence, other medical evidence, and the findings of the state agency medical consultants in reaching his equivalence conclusion; therefore, his finding that Flores did not equal a listing from May 9, 2022 through

---

[3] *Id*. at 10 (citing 20 CFR §§ 404.1505, 404.1525; 42 U.S.C. § 423(d)(1)(A); *and Sullivan v. Zebley*, 493 U.S. 521, 524-25, 532-33 (1990) (superseded on other grounds)).

October 26, 2022 comports with the medical equivalence requirements set forth in 20 C.F.R. § 404.1526 and SSR 17-2p. *Id.* at 10-11.

In Reply, Flores repeats her argument that the ALJ failed to satisfy his duty by offering only a conclusory statement about medical equivalence and cites other district court decisions remanding social security cases where the ALJ failed to analyze medical equivalence. ECF No. 12. Flores also disputes the assertion that she failed to meet her burden at Step 3, arguing that the medical evidence "clearly established a combination of impairments which could have equaled the Listing(s)." *Id.* at 3-5.

## 2. Constitutionality of Social Security Ruling 17-2P

Flores asserts that Social Security Ruling (SSR) 17-2p requiring medical testimony at the ALJ level is unconstitutional because it requires that ALJs have "ME evidence" to support a finding of medical equivalence, when the regulation "clearly and unambiguously" places the responsibility of deciding medical equivalence solely on the ALJ. ECF No. 9-1 at 9. As the regulation is clear and unambiguous in its wording and intent, Flores argues, deference to the Commissioner's ruling is inappropriate and "would permit the agency, under the guise of interpreting a regulation, to create a *de facto* new regulation." *Id.* at 10 (quoting *Kisor v. Wilkie*, 139 S.Ct. 2400, 2415 (2019)).

The Commissioner avers that there is no conflict between 20 C.F.R. § 404.1526(e)(3), which imparts the responsibility for deciding medical equivalence on the ALJ, and SSR 17-2p, which details the evidence that should be considered and/or obtained in certain cases.[4] The Commissioner argues that Flores conflates the issue of who makes the equivalence decision with the issue of what evidence must be considered to reach that decision in some instances. *Id.*

---

[4] ECF No. 11 at 12 (citing SSR 17-2p, 2017 WL 3928306 (2017) (Evidence needed by adjudicators at the hearings and appeals council level of the administrative review process to make findings about medical equivalence)).

Moreover, the Commissioner notes, this point is not directly at issue in this case because the ALJ did *not* obtain additional medical expert ("ME") evidence as directed by SSR-17-2p, nor did he cite that ruling.  *Id*. at 12-13.  As such, this case is not an appropriate vehicle to address the constitutionality argument.  *Id*. at 13.

In Reply, Flores reiterates her argument that the Commissioner inappropriately created a requirement for ME testimony to find medical equivalence and asserts that this issue is properly before the court because, although the ALJ did not cite SSR 17-2p, he "implicitly relied on it" by mentioning that no designated medical source found equivalence.  *Id*. at 5.  Flores further asserts that a decision by this Court to uphold the aspects of SSR 17-2p that require ME evidence would effectively "eliminate the issue of medical equivalence."  *Id*. at 6.

### 3.   Application of the Age Categories and Constitutionality of Agency Interpretations

Flores also argues that the ALJ committed reversible error by applying the age categories mechanically when the evidence and overall factors of her case established an onset of May 9, 2022, 6 months before plaintiff turned 50 years old.  *Id*. at 5.  Flores contends that a borderline age range situation  applied, so the age categories should not have been applied mechanically according to 20 C.F.R. § 404.1563(b).  *Id*. at 3, 10-14.  Flores argues that the Commissioner's interpretations of 20 C.F.R. § 404.1563(b), found at HALLEX I-2-2-42(B)(1) and POMS DI 25015.006, are unconstitutional because they contradict the regulation by directing adjudicators to mechanically apply the age categories if doing so would result in a favorable decision, the only exceptions being if the claimant is within six months of her date last insured or the adjudication date of her claim is within six months of reaching the older age category.  *Id*. at 10-11.  Flores asserts that, because the meaning of the regulation is unambiguous as to the non-mechanical application of age categories in a borderline age situation,  the Commissioner's interpretation is inconsistent and not subject to

deference.  *Id*. at 11-13.  Flores contends that the "overall impact of all the factors" in her case "clearly supported" an onset of May 9, 2022, six months prior to her reaching the older age category"  *Id*. at 13.

In Opposition, the Commissioner argues that the ALJ provided an additional rationale reflecting that he did not apply the age categories mechanically.  ECF No. 11 at 14-15.  First, the Commissioner explains, the ALJ acknowledged his disagreement with counsel's argument that HALLEX-I-2-2-42(b)(1) and POMS DI 25015.006 should not be accorded deference.  The ALJ then proceeded to provide an additional explanation that, even if he were to treat the case as a borderline age situation, the factors in this case did not support application of the closely approaching advanced age category.  *Id*.  Thus, the Commissioner argues, the ALJ considered the overall impact of factors in the case, did not apply the age categories mechanically, and complied with 20 C.F.R. § 404.1563(b).  *Id*. at 15.  The Commissioner contends that there is thus no need to reach or address Flores' challenges to POMS and HALLEX.  *Id*. at 16.  Even if the court were to reach the issue, the Commissioner avers that these agency guidelines merely "flesh[] out what constitutes a 'borderline age situation,'" which term is undefined by statute.  *Id*.  (citation omitted).

In Reply, Flores argues that the ALJ conducted a mere "quasi analysis" of whether a borderline age situation existed and applied the wrong legal standard when he claimed that there were not "additional vocational adversities" when the law instead requires evaluation of the overall impact of all the factors in a case.  ECF No. 12 at 8.  Flores also avers that the ALJ did, in fact, rely on and cite HALLEX in awarding an onset "1 day prior to Plaintiff's 50th birthday," so she does have standing to assert the unconstitutionality of the Commissioner's interpretation of the law.  *Id*.  The court notes that the ALJ did not award an onset date one day before Flores' birthday;

he found the claimant disabled as of October 27, 2022 and she turned 50 years' old on November 9, 2022.  Rec. at 20.

## V.   APPLICABLE LAW AND ANALYSIS

### A.   Standard of Review

The role of this Court on judicial review under 42 U.S.C. § 405(g) is to determine whether the decision is supported by substantial evidence on the record as a whole and whether the proper legal standards are applied in evaluating the evidence.[5]  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it is more than a scintilla but less than a preponderance.[6]  A finding of "no substantial evidence" is appropriate only if no credible evidentiary choices or medical findings support the decision.[7]  The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try any issues *de novo*.[8]  This standard precludes the court from reweighing the evidence or substituting its judgment for that of the administrative fact finder.[9]

The court must affirm the Commissioner's determination unless it finds that the ALJ applied the incorrect legal standard or that the ALJ's determination is not supported by substantial evidence.[10]  The Court weighs four elements of proof when determining whether there is

---

[5] *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citing *Perez v. Barnhar*t, 415 F.3d 457, 461 (5th Cir. 2005)); *Richard ex rel Z.N.F. v. Astrue*, 480 F. App'x 773, 776 (5th Cir. 2012) (citation omitted); *Stringer v. Astrue*, 465 F. App'x 361, 363 (5th Cir. 2012) (citing *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002)).
[6] *Richardson v. Perales*, 402 U.S. 389, 401 (5th Cir. 1971) (citation omitted); *Richard ex rel Z.N.F.*, 480 F. App'x 773, 776 (5th Cir. 2012) (citing *Perez*, 415 F.3d at 461).
[7] *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (citations omitted).
[8] *Halterman ex rel Halterman v. Colvin,* 544 F. App'x 358, 360 (5th Cir. 2013) (citing *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).
[9] *Newton*, 209 F.3d at 452 (citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)); *see also Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985).
[10] *Brown v. Saul*, 858 F. App'x 711 (5th Cir. 2021) (citing *Est. of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)); *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.[11]

A "physical or mental impairment" is "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."[12] To qualify as a disability, the impairment must be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.[13] The mere presence of an impairment, however, is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity."[14] Thus, to be considered disabled and eligible for benefits,[15] the Claimant must prove his disability by establishing a physical or mental impairment lasting at least twelve months that prevents him from engaging in substantial gainful activity.[16]

The Commissioner has promulgated regulations that provide procedures for evaluating disability claims.[17] "In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in [A]ppendix 1 of the [S]ocial [S]ecurity [R]egulations; (4) the impairment prevents the claimant from doing

---

[11] *Chrisner v. Astrue,* 249 F. App'x 354, 356 (5th Cir. 2007) (quoting *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)); *accord Perez*, 415 F.3d at 462 (citation omitted).
[12] 42 U.S.C. § 423(d)(3).
[13] *Id.* § 423(d)(1); *see also Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citations omitted).
[14] *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)) (internal quotations and emphasis omitted).
[15] The relevant law and regulations governing claims for DIB and supplemental security income are identical. *Carmon v. Barnhart*, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).
[16] 42 U.S.C. § 1382c(a)(3)(A); *see also* 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A).
[17] 20 C.F.R. §§ 404.1501–1599 & Appendices, §§ 416.901–998.

past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity."[18]  The claimant has the burden of proof under the first four steps; if the claimant successfully carries this burden, the burden shifts to the Commissioner at the fifth step to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing.[19]  When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant."[20]

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits.[21]  At Step 3, the ALJ must identify every Listing that could apply to the claimant.[22]  However, "[p]rocedural perfection in administrative hearings is not required," and a reviewing court may only vacate a judgment if the "substantial rights" of a party have been affected.[23]  With respect to a given Listing, a claimant's substantial rights are affected where the claimant "would appear to have met [his] burden of demonstrating that [he] meets the Listing requirements" for a given Listing.[24]

## B. Step 3 Equivalence Finding

While Flores argues that a finding of medical equivalence would have been "reasonable," this Court's role on review is not to determine the reasonableness of the ALJ's decision.  Rather, the Court's role is to ensure that the ALJ's conclusion is based on substantial evidence and

---

[18] *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007).

[19] *Id.* at 448.

[20] *Plaisance v. Astrue*, No. 08-5134, 2009 WL 4161086, at *2 (E.D. La. Nov. 23, 2009) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Kraemer v. Sullivan*, 885 F.2d 206, 208 (5th Cir. 1989)).

[21] *Webster v. Kijakazi*, 19 F. 4th 715, 720 (5th Cir. 2021) (quoting *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)).

[22] *Audler*, 501 F.3d at 448 ("The ALJ did not identify the listed impairment for which Audler's symptoms fails to qualify, nor did she provide any explanation as to how she reached the conclusion that Audler's symptoms are insufficiently severe to meet any listed impairment. Such a bare conclusion is beyond meaningful judicial review.") (internal quotation omitted).

[23] *Mays v. Bowen*, 837 F.2d 1362, 1362–63 (5th Cir. 1988).

[24] *Audler*, 501 F.3d at 449; *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990) (stating claimant bears burden at step three to demonstrate that he meets a given Listing).

application of the proper legal standards.  Indeed, the fact that the court might have reached a different conclusion is of no moment when there is substantial evidence to support the ALJ's determination.[25]

At Step 3 of the 5–step sequential analysis, the ALJ must determine whether a claimant's severe impairments meet or equal one or more of the Listings.  The burden of proof rests with the claimant at this step.[26]  Ultimately, she has the burden of proving that her impairment or combination of impairments meets or medically equals a listing.[27]  That burden is to provide and identify medical signs and laboratory findings that support all criteria for a Step 3 impairment determination.[28]  If a claimant fails to provide and identify medical signs and laboratory findings that support all criteria of a Listing, the court must conclude that substantial evidence supports the ALJ's finding that the required impairments for any Listing are not present.[29]

If a claimant does not exhibit all of the requirements of a listed impairment, medical equivalence may be established by showing that her unlisted impairment, or combination of impairments, is equivalent to a listed impairment.[30]  To do so, a claimant must present medical findings equal in severity and duration to all the criteria for the most similar listed impairment.[31]  An impairment is also medically equivalent to a listed impairment in appendix 1 if it is at least equal in severity and duration to the criteria of any listed impairment.[32]  As set forth in the listing

---

[25] *Dubose v. Mathews*, 545 F.2d 975, 977 (5th Cir. 1977) (citations omitted).

[26] *Audler*, 501 F.3d at 447–48.

[27] *Thomas v. Astrue*, No. 07-053, 2009 WL 2777867, at *3 (N.D. Tex. Aug. 31, 2009) (citing 20 C.F.R. § 404.1520(d); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990)).

[28] *McCuller v. Barnhart*, 72 F. App'x. 155, 158 (5th Cir. 2003); *Selders*, 914 F.2d at 619; 20 C.F.R. § 404.1526(a).

[29] *Selders*, 914 F.2d at 620.

[30] *Carrillo v. Astrue,* 2010 WL 2136438, at * 5 (W.D. Tex. May 26, 2010) (citing *Sullivan*, 493 U.S. at 531.).

[31] *Id.* (citing *Sullivan*, 493 U.S. at 531, *Selders*, 914 F.2d at 619 (5th Cir. 1990) (claimant must provide medical findings that support each of the criteria for the equivalent impairment evaluation); 20 C.F.R. § 404.1526 (medical findings must be at least equal in severity and duration to the listed findings); 20 C.F.R. § 416.926 (impairment is medically equivalent to a listing if medical findings related to the impairment are at least of equal medical significance)).

[32] *Woodridge v. Colvin*, No. 15-485, 2016 WL 4253971, at *8–9 (M.D. La. July 14, 2016), *R. & R. adopted*, No. 15-485, 2016 WL 4257051 (M.D. La. Aug. 10, 2016).

appendix, "[r]espiratory disorders may be associated with disorders in other body systems, and we consider the combined effects of multiple impairments when we determine whether they medically equal a listing."[33]

Flores contends that the ALJ committed reversible error at Step 3 by neglecting to conduct an analysis of whether the Plaintiff medically equaled Listings 3.02 A or B.[34]  In explaining his step 3 decision, ALJ Benedict stated that he

> considered the impairments listed in Appendix 1 to Subpart P of Part 404 of the Regulations and finds that the claimant's impairments did not singly or in combination meet or medically equal the required criteria for any of the impairments listed under section 1.01, Category of Impairments, Musculoskeletal; section 3.01, Category of Impairments, Respiratory Disorders, including listing 3.02, *Chronic respiratory disorders*; section 14.01, Category of Impairments, Immune System Disorders, including listing 14.03, *Systemic vasculitis*; or any other listed impairment prior to October 27, 022,  **The record does not establish the medical signs, symptoms, laboratory findings, or degree of functional limitation required to meet or equal the criteria of any listed impairment prior to October 27, 2022** *and* **no acceptable medical source designated to make equivalency findings has concluded that the claimant's impairments medically equaled a listed impairment during this period.**

Rec. at 13 (emphasis added).  When an ALJ determines that medical equivalence of a listing is not met, he need not articulate specific findings in that portion of his decision because "[a]n adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3."[35]  However, "an ALJ's

---

[33] 20 CFR Part 404, Subpart P, Appendix 1, Listing 3.00(R)(2).

[34] ECF No. 9-1 at 5.

[35] SSR 17-2p, 2017 WL 3928306, at *4; *see also Taylor v. Kijakazi*, No. 20-88, 2021 WL 4190876, at *2 (N.D. Ind. Sept. 15, 2021) (noting that under the March 2017 social security regulation, the ALJ does not have to separately discuss equivalence); *Gibson v. Kijakazi*, 643 F. Supp. 3d 78, 88-89 (D.D.C. 2022) (explaining that ALJs need not articulate specific evidence supporting equivalence findings at step three if they believe the record evidence does not reasonably support a finding of equivalence because later articulations of why  the individual is or is not disabled will provide a sufficient rationale for subsequent reviewer to determine the basis for the equivalence finding).  *Compare with Kathleen C. v. Kijakazi,* No. 21-5035, 2023 WL 1767485, at *3-*4 (E.D. Wash. Jan. 23, 2023) (remanding case

finding as to medical equivalence at Step Three must still be supported by substantial evidence based on medical sources—even if the ALJ does not obtain a State medical expert opinion and relies on medical evidence pertinent to equivalency at Steps Four and Five."[36]  In other words, the ALJ's findings as to Steps Four and Five must still enable this court to follow the ALJ's reasoning in determining that Plaintiff's impairment was not the medical equivalent of Listing 3.02 A or B.[37]

Listing 3.02 pertains to chronic respiratory disorders due to any cause except cystic fibrosis, and may be met if a claimant's spirometry results are equal to or less than the levels listed in 3.02 A, B,  C, *or* D.  Flores alleges medical equivalence to either 3.02 A or B.  Section 3.02 A requires a FEV1 (Forced Expiratory Volume) less than or equal to the value in Table I–A or I–B for the claimant's age, gender, and height without shoes while 3.02 B requires a FVC (Forced Vial Capacity) less than or equal to the value in Table II–A or II–B for the claimant's age, gender, and height without shoes.

As ALJ Benedict noted, Flores is a 5 foot, 1.5 inch tall female over the age of 20.  Rec. at 16.  Accordingly, to meet listing 3.02 A or B, her FEV1 must have been less than or equal to 1.15 and/or her FVC less than or equal to 1.40.  Rec. at 13 (citing Ex. 13F/5).[38]  ALJ Benedict found that Flores met listing 3.02 as of October 27, 2022 but not before, because spirometry performed on July 25, 2022, demonstrated a FVC of 1.53 and FEV1 of 1.39, both above listing level.  *Id.*

---

where the ALJ did not provide adequate summary or evaluation of relevant evidence at step three *or elsewhere* in the decision).

[36] *McCarthy v. Berryhill*, No. 18-02800, 2020 WL 2079185, at *4 (D. Colo. Apr. 30, 2020) (citing 2017 WL 3928306, at *4; 20 C.F.R. § 416.927(d)(2), (f)(2)).

[37] *See Peak v. Comm'r*, No. 2019 WL 2420280, at *6, n.5 (E.D. Mich. May 23, 2019) (finding that even if SSR 17-2p applied, ALJ's analysis was insufficient because, "although the ALJ might no longer be 'required to articulate specific evidence' supporting his finding regarding medical equivalence, such a finding still must be supported by substantial evidence in the record") (quoting SSR 17-2p), *affirmed and adopted*, 2019 WL 2417430, at *1 (E.D. Mich. June 10, 2019).

[38] *See also* 20 CFR Part 404, Subpart P, Appendix 1, Listing 3.02.

The ALJ properly concluded that, since the amended alleged onset date of disability, May 9, 2022,  Flores had severe impairments of, *inter alia*, interstitial lung disease and Wegener's granulomatosis.  Rec at 13.  Indeed, there is no dispute that Flores showed she suffered from a "respiratory disorder" of the type set forth in Listing 3.02[39] or that Flores' test results precluded her from meeting a Listing as of the amended alleged onset date.  The question is thus whether the ALJ properly concluded that she did not medically equal Listing 3.02 A or B.

While the ALJ's one-sentence explanation at Step 3 that "[t]he record does not establish the medical signs, symptoms, laboratory findings, or degree of functional limitation required to meet or equal the criteria of any listed impairment prior to October 27, 2022" does not itself reflect his reliance on substantial evidence, the ALJ's subsequent analyses at Steps 4 and 5 provide more than enough detail for this Court to determine that his Step 3 determination was based on substantial evidence.[40]  Indeed, ALJ Benedict specifically noted that Flores' statements concerning the intensity, persistence, and limiting effects of her symptoms are not fully supported before October 27, 2022.  Rec. at 14.  To support that conclusion, the ALJ cited Flores' April 26, 2022, rheumatologist visit just two week before her alleged onset date of May 9, 2022.  Rec. at 15 (citing Ex. 8F).  On examination, her lungs were mostly clear but with some possible crackles in the left mid lung and occasional squeaks.  *Id*.  At that visit, Flores admitted that she had not seen a pulmonologist as recommended.  *Id*.  The record is devoid of pulmonary test results at the time of Flores' alleged amended onset date of May 9, 2022, which test results would constitute the type of evidence necessary to establish medical equivalence of Listings 3.02 A or B at that date.

---

[39] *Id*.

[40] *See McCarthy*, 2020 WL 2079185, at *4 (citing SSR 17-2p; *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012); *see also Peak v. Comm'r*, No. 2019 WL 2420280, at *6, n.5 (E.D. Mich. May 23, 2019), *affirmed and adopted,* 2019 WL 2417430, at *1 (E.D. Mich. June 10, 2019)).

Over two months after her alleged onset date (May 9, 2022), on July 25, 2022, Flores underwent pulmonary testing. Rec. at 574-81. As ALJ Benedict noted, the CT scan obtained on that date showed pulmonary parenchymal findings compatible with a moderate, usual interstitial pneumonia pattern of interstitial lung disease. *Id*. at 16 (citing Ex. 13F/1). Spirometry performed the same day revealed a "moderately severe restrictive lung disease with FVC of 1.53 and FEV1 of 1.39," again insufficient under the Listing 3.02 A and B required levels. In other words, neither Flores' FVC nor FEV1 levels had reached Listing level by July 25, 2022, though they had declined since July of 2021.[41] As the ALJ acknowledged, there had been a "rapid progression of the claimant's interstitial lung disease on imaging since December 2021." Rec. at 16 (citing Ex. 14F/2). By October 27, 2022, Flores' FVC had dropped to 1.36, which met the Listing 3.02 B requirement of 1.40 or less. *Id*. (citing Ex. 17F/1).

The ALJ's decision contains numerous detailed record citations demonstrating that he undertook a careful and thorough review of Flores' records. In fact, the ALJ cited every exhibit referenced by Flores in her summary judgment argument regarding the ALJ's purported failure to undertake an evidentiary analysis of medical equivalence.[42] Though the ALJ failed to set forth the basis for his conclusion at Step 3 in explicit detail, he elaborated on his conclusion during his Step 4 and 5 analyses. That he reached a different conclusion than Flores would have preferred does not render his decision unsupported by substantial evidence. This assignment of error is without merit.

### C. Constitutionality of Social Security Ruling 17-2p

Flores argues that SSR 17-2p[43] is unconstitutional because it requires "medical expert

---

[41] Rec. at 403 (levels before use of bronchodilator).

[42] *Compare* ECF No. 9-1 at 6-8 *with* Rec. at 14-17.

[43] This ruling provides, in pertinent part:

testimony at the ALJ level" to support a medical equivalence finding, whereas 20 C.F.R. § 404.1526(c) "places the responsibility for deciding medical equivalence solely with the ALJ." Accordingly, Flores argues, SSR 17-2p contradicts the unambiguous wording and intent of the regulation and should be declared unconstitutional under *Kisor v. Wilkie*, 139 S.Ct. 2400 (2019), which reinforces the outer limits of agency deference under *Auer v. Robbins*, 519 U.S. 452 (1997).[44]   Plaintiff contends that SSR 17-2p is not owed *Auer* deference because it directly contradicts the plain and unambiguous language of the applicable regulation, which provides:

> For cases at the administrative law judge or Appeals Council level, the responsibility for deciding medical equivalence rests with the administrative law judge or Appeals Council.

20 C.F.R. § 404.1526(e)(3).

Contrary to Flores' argument, SSR 17-2p did not compel the ALJ to seek additional expert evidence.  ALJs "may ask for and consider evidence from medical experts."[45]  While Flores argues that SSR 17-2p requires a ME conclusion of medical equivalence to support the ALJ's equivalence finding (and thus usurps the ALJ's responsibility as the decisionmaker on the equivalence issue), the plain language of SSR 17-2p does not impose such a requirement.[46]  Indeed, when an ALJ determines, as ALJ Benedict did here, that the record does not support a finding of medical equivalence, he is not required to obtain ME evidence:

---

> To demonstrate the required support of a finding that an individual is disabled based on medical equivalence at step 3, the record must contain one of the following:
> 1.    A prior administrative medical finding from an MC or PC from the initial or reconsideration adjudication levels supporting the medical equivalence finding, or
> 2.    ME evidence, which may include testimony or written responses to interrogatories, obtained at the hearings level supporting the medical equivalence finding, or
> 3.    A report from the AC's medical support staff supporting the medical equivalence finding.

Soc. Sec. Ruling (SSR) 17-2p: Titles II & XVI: Evidence Needed by Adjudicators at the Hearings & Appeals Council Levels of the Admin. Rev. Process to Make Findings About Med. Equivalence, SSR 17-2p (S.S.A. Mar. 27, 2017).
[44] *See Schofield v. Saul*, 950 F.3d 315, 322 (5th Cir. 2020) (explaining that *Kisor* reinforces the limits of *Auer* deference, in whatever "zombified" form such deference still exists).
[45] SSR 17-2p, 2017 WL 3928306, at *3.
[46] *Gibson*, 643 F. Supp. 3d, at 89-90 (citing SSR 17-2p, 2017 WL 3928306, at *3 (Mar. 27, 2017)).

> If an adjudicator at the hearings or AC level believes that the evidence does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, we do not require the adjudicator to obtain ME evidence or medical support staff input prior to making a step 3 finding that the individual's impairment(s) does not medically equal a listed impairment.

SSR 17-2p, 2017 WL 3928306, at *4.  Accordingly, SSR 17-2p does not require an ALJ to obtain a medical source's conclusion regarding medical equivalence before reaching an opinion of no medical equivalence.[47]

In his Step 3 finding, ALJ Benedict states:

> The record does not establish the medical signs, symptoms, laboratory findings, or degree of functional limitation required to meet or equal the criteria of any listed impairment prior to October 27, 2022 ***and*** no acceptable medical source designated to make equivalency findings has concluded that the claimant's impairments medically equaled a listed impairment during this period.

Rec. at 13 (emphasis added).  Notwithstanding ALJ Benedict's ambiguous language that could be read to suggest that a medical source must have concluded that Flores' impairments medically equaled a listed impairment before he could reach the same conclusion, ALJ Benedict specifically cited record evidence establishing that Flores did not exhibit "the established signs, symptoms, laboratory findings, or degree of functional limitation" required to meet a listing as of May 9, 2022, including medical evidence that the plaintiff's lungs were mostly clear with only some possible crackles in the left mid-lung and occasional squeaks in later April 2022, when she was encouraged to see a pulmonologist and quit smoking, and insufficient FVC and FEV1 levels in July 2022.  Rec. at 14-17.  The ALJ satisfied his regulatory responsibility to serve as the decisionmaker for the

---

[47] *See Bishaw v. Comm'r of Soc. Sec.*, No. 18-1370, 2020 WL 686265, at *4 (W.D. Mich. Jan. 27, 2020) (noting that SSR 17-2p replaced SSR 96-6p, which required an ALJ to obtain a medical opinion on equivalence) (citing *Thomas v. Comm'r of Soc. Sec.*, No. 12-14758, at *8-9 (E.D. Mich. Feb. 21, 2014)), *R. & R. adopted*, No. 18-1370, 2020 WL 636000 (W.D. Mich. Feb. 11, 2020); *Cooper v. Comm'r*, No. 18-12611, 2019 WL 2240711, at *4 (E.D. Mich. Apr. 8, 2019) (holding ALJ did not err in failing to obtain an expert medical opinion as to whether claimant's impairments medically equaled a listing where ALJ did not find medical equivalence), *R.&R. adopted*, No. 18-12611, 2019 WL 2208151 (E.D. Mich. May 22, 2019); *Strittmatter v. Kijakazi,* No. 22-692, 2023 WL 207907, at *7 (N.D. Ohio Jan. 17, 2023) (same).

medical equivalence determination, and there is no disagreement between the regulation and the ALJ's obligation to decide medical equivalence.

To the extent the plaintiff challenges SSR 17-2p's instruction that, where an ALJ believes that an individual's impairments do medically equal a listing, he must consider medical expert evidence supporting that finding, that issue is not implicated by the facts of this case. Accordingly, the court need not reach the question of *Auer* deference on this assignment of error.

**D.  <u>Harmless Error</u>**

Plaintiff also bears the burden of showing that any alleged error of law was prejudicial because the Supreme Court has recognized that the doctrine of harmless error applies to administrative determinations, and the Fifth Circuit has specifically held that it will not vacate a judgment unless the substantial rights of a party are affected.[48]  "The major policy underlying the harmless error rule is to preserve judgments and avoid waste of time."[49]  Courts apply the harmless error doctrine in Social Security disability cases when the error does not impact the outcome of the case and, therefore, does not prejudice the claimant.[50]

To the extent Plaintiff's SSR 17-2p argument can be read to argue that the ALJ applied the wrong standard and thus committed legal error, such argument fails to provide a basis for relief in this case.  Although a court may only affirm an agency decision on the basis of the rationale it advanced below,[51] the court must consider whether an ALJ's error was harmless when determining

---

[48] *See Shinseki v. Sanders*, 556 U.S. 396, 406–08 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination"); *Jones v. Astrue*, 691 F.3d 730, 734 (5th Cir. 2012) ("Even if we did find that the ALJ was required to request further documentation, we would affirm, because Jones has not met her burden of showing that any error was prejudicial.") (citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (noting that "'procedural perfection in administrative proceedings is not required' as long as 'the substantive rights of a party have not been affected.'")).

[49] *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

[50] *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003); *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (finding that when an error does not render the ALJ's determination unsupported by substantial evidence, it does not prejudice the claimant's substantive rights and is only harmless error).

[51] *January v. Astrue*, No. 10–30345, 2010 WL 4386754 (5th Cir. Nov. 5, 2010).

whether to reverse and remand the case.[52]  Where an ALJ fails to *identify* the proper legal standard, the operative question  is whether he *applied* the proper legal standard and whether the erroneous identification affects the substantial rights of the claimant.[53]

Here, although the ALJ referenced the absence of any evidence on medical equivalence from an "acceptable medical source designated to make equivalency findings,"[54] the ALJ's analysis reflects that he nevertheless fulfilled his obligation to serve as the decisionmaker on medical equivalence by thoroughly reviewing the evidence and determining that the medical record evidence did not support an equivalency finding, or any disability finding, at the earlier date sought by Plaintiff.

As detailed above, the ALJ considered, and cited to, each piece of medical evidence referenced by Flores in her equivalence argument, including her history of interstitial lung disease, Wegener's granulomatosis, osteoarthritis of the knees, fibromyalgia, gastroesophageal reflux disease, and vasculitis.  Rec. at 14.  He articulated the results of her various medical evaluations and tests, including an evaluation from Dr. Scott Sondes,[55] three sets of spirometry results,[56] rheumatological findings,[57] medical imaging and treatment of the plaintiff's spine,[58] examinations subsequent to her May 9, 2022 fall,[59] 2022 pulmonary imaging results and diagnoses,[60] and state agency medical consultant findings.[61]  The ALJ's citations to the record demonstrate his thorough review of the evidence and his fulfillment of the responsibility to make a medical equivalency

---

[52] *Jones v. Saul*, 834 F. App'x 839, 841-42 (5th Cir. 2020) (citing *Morris v. Bowen*, 864 F.2d 333, 335 (5th. Cir. 1988).
[53] *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) (citing *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).
[54] Rec. at 13.
[55] *See id*. at 14 (citing Ex. 3F/5).
[56] *Id*. at 15 (citing Ex. 4F/2); 16 (citing Ex. 13F/3, 5; 17F/1).
[57] *Id*. at 15 (citing Ex. 6F/1; 8F/2-4, 7)
[58] *Id*. (citing Ex. 7F/12; 11F/10,11; 12F/2).
[59] *Id*. at 16 (citing Exs. 9F/1; 12F/2, 10).
[60] *Id*. (citing 13F/1, 14F/2, 16F/2, 3).
[61] *Id*. (citing Exs. 2A, 3A).

determination.  As such, his reference to the absence of any medical expert's medical equivalence conclusion to further support his own findings does not equate to the application of an erroneous legal standard and would in any event constitute harmless error that did not affect his decision making process.  The plaintiff's substantial rights were therefore not affected by the error.[62]

### E.  <u>Application of the Age Categories and Constitutionality of Agency Interpretations</u>

ALJ Benedict concluded that Flores, who was born on November 9, 1972 and was 49 years old (a "younger individual," age 45-49) on the amended alleged onset date of May 9, 2022, had not changed age categories as of the established onset date of October 27, 2022.  Rec. at 18. Age is a vocational factor to be considered in combination with a claimant's residual functional capacity, education, and work experience.  20 C.F.R. § 404.1563(a).  "In determining the extent to which age affects a person's ability to adjust to other work," the Administration considers "advancing age to be an increasingly limiting factor in the person's ability to make such an adjustment."  *Id*.

A claimant is classified in one of three age categories: (1) a younger person (18-49), (2) a person closely approaching advanced age (50-54), or (3) a person of advanced age (55 or older). 20 C.F.R. §§ 404.1563(c)-(e), 416.963(c)-(e).  Generally, an individual attains a given age on the day before her birthday. *Id*. § 404.2(c)(4).  However, the Administration

> will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

*Id*. § 404.1463(b).  The regulation does not specifically define "borderline," "few days to a few months," or identify the starting point for the few days/few months countdown.

---

[62] *See Fink v. Barnhart*, 123 F. App'x 146, 148 (5th Cir. 2005) (citing *Morris*, 864 F.2d 333, 335) (harmless error does not affect a claimant's substantial rights).

### 1. "Borderline"

The Fifth Circuit has explained that, because borderline is not specifically defined, the Secretary has discretion to determine when a situation is "borderline."[63]  The Administration's Hearings, Appeals, and Litigation Law Manual ("HALLEX") and Program Operations Manual Systems ("POMS") provide some guidance.  Although HALLEX does not carry the authority of law, "where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required."[64]

HALLEX I-2-2-42(B)(1) provides:

If application of a claimant's chronological age results in a decision that the claimant is not disabled, an ALJ will identify whether the claim may involve a borderline age situation by applying a two-part test:

- Is the claimant's age within a few days or a few months of the next higher age category?
- Will the higher age category result in a decision of "disabled" instead of "not disabled"?

If the answer to one or both parts of the test is "no," a borderline age situation either does not exist or would not affect the outcome of the decision. The ALJ will then use the claimant's chronological age.
If the answer to both parts of the test is "yes," a borderline age situation exists, and the ALJ must decide whether it is more appropriate to use the claimant's chronological age or the higher age category.

### 2. "Within a Few Days to a Few Months"

Neither the regulation nor the Fifth Circuit has addressed the meaning of the phrase "within a few days to a few months."  The Fifth Circuit has, however, repeatedly held that the Commissioner has significant discretion when determining whether a situation is borderline.[65]

---

[63] *Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016) (per curiam) (quoting *Harrell v. Bowen*, 862 F.2d 471, 479 (5th Cir. 1988)) (cleaned up).

[64] *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000) (citation omitted).

[65] *Lindsey v. Saul*, No. 20-303, 2021 WL 933748, at *9 (S.D. Tex. Jan. 20, 2021) (citing *Stanridge–Salazar v. Massanari*, 254 F.3d 70, 2001 WL 502506, at * 1 (5th Cir. Apr. 24, 2001) (per curiam); *Skinner v. Shalala*, 47 F.3d 424, 1995 WL 71092, at *5 (5th Cir. Jan. 25, 1995) (per curiam); *Harrell v. Bowen*, 862 F.2d 471, 479 (5th Cir. 1988);

The Administration interprets "within a few days to a few months" to mean "a period not to exceed six months."  HALLEX I-2-2-42(B)(1).  In an unpublished decision, the Fifth Circuit noted that there is no obvious inconsistency between the agency's interpretation of less than six months and the language calling for "a few days to a few months," so the interpretation is entitled to deference.[66]  The six month interpretation is not at issue here.  Instead, Plaintiff challenges the Commissioner's sub-regulatory interpretation that the borderline age situation applies if a claimant will reach the next age category within a few days to a few months after the

- Date of adjudication;
- Date last insured;
- End of disabled widow(er)'s benefit prescribed period;
- End of child disability re-entitlement period; or
- Date of cessation of disability.

HALLEX I-2-2-42(B)(1).

Flores also argues that Commissioner contradicts the law when she instructs adjudicators to mechanically apply the age categories only if it would result in a favorable decision.[67]  Flores points to the Administration's Program Operations Manual System (POMS) DI 25015.006, which provides that, "[i]f using the claimant's age results in a partially or fully favorable decision, only consider the claimant's chronological age.  This is not a borderline age situation."[68]  Thus, Flores argues, while the regulation unambiguously states that the age categories "will not be applied mechanically" and directs adjudicators to consider the "overall impact of factors" to effectuate approvals within a few months of reaching an older age category, the POMS directs them to apply

---

*Underwood v. Bowen*, 828 F.2d 1081, 1082 (5th Cir. 1987), *R. & R. adopted*, No. 20-303, 2021 WL 931694 (S.D. Tex. Mar. 10, 2021).
[66] *Fontenot*, 661 Fed. App'x at 277 n.1.
[67] ECF No. 9-1 at 10.
[68] *Id*. at 11 (citing POMS DI 25015.006*; see also* HALLEX-I-2-2-42(B)(I)).

the age categories mechanically if it results in approval, and such an inconsistent interpretation is not subject to *Auer* deference under *Kisor*.

Both HALLEX and POMS provide that, if using the chronological age will result in a favorable decision, the ALJ should not use a higher age category solely because it will result in a *more favorable* decision.  HALLEX I–2–2–42(A); POMS DI 25015.006(A) (emphasis added). HALLEX provides: "If using the claimant's chronological age will result in a favorable decision, an administrative law judge (ALJ) will not use the higher age category solely because it will result in a more favorable onset date, determination, or decision for the claimant." HALLEX I–2–2–42(A). POMS is even more specific, providing: "If using the claimant's chronological age results in a partially or fully favorable determination, only consider the claimant's chronological age. This is not a borderline age situation." POMS DI 25015.006(A).

Flores conflates the question of whether a borderline age situation *exists* and whether an age category should be *applied mechanically*.  The sub-regulatory guidance excerpted above explains what a borderline age situation is, which explanation is warranted given the absence of a definition in the regulation.

Under *Auer v. Robbins*, 519 U.S. 452 (1997), an agency's interpretation of its own regulation must be upheld unless plainly erroneous or inconsistent with the regulation.  Although the Supreme Court narrowed the scope of *Auer* deference in *Kisor*,[69] an agency's interpretation of a regulation is still entitled to deference when five criteria are met:

> (1) the regulation must be genuinely ambiguous after the court has exhausted all the traditional tools of construction; (2) the interpretation must be reasonable, falling within the zone of ambiguity the court has identified after employing all its interpretive tools; (3) the character and context of the agency interpretation must entitle it to controlling weight as the agency's authoritative or official position such

---

[69] *See Schofield v. Saul*, 950 F.3d 315, 322 (5th Cir. 2020) (explaining that *Kisor* reinforces the limits of *Auer* deference, in whatever "zombified" form such deference still exists).

as official staff memoranda that were published in the Federal Register; (4) the agency's interpretation must in some way implicate its substantive expertise; and, finally, (5) the agency's reading of a rule must reflect fair and considered judgment, that is more than a convenient litigating position or a post hoc rationalization.[70]

SSR 17-2P is an interpretation of § 404.1526 and is thus owed *Auer* deference if the five criteria outlined in *Kisor* are met.[71]

The first three *Kisor* factors can be dealt with quickly; POMS is a "primary source of information used by Social Security employees to process claims for Social Security benefits,"[72] and HALLEX "conveys guiding principles, procedural guidance, and information to hearing level and Appeals Council staff."[73]  Further, the SSA has substantive expertise in interpreting its oft-complex regulations, and the interpretation at issue here was not adopted post-hoc or solely as a litigating position.  The remaining factors are (1) whether the regulation is ambiguous and (2) whether the agency's interpretation is reasonable.

The regulation at hand, 20 C.F.R. § 404.1563(b), is unquestionably ambiguous; as the Fifth Circuit has recognized, the regulation fails to define "borderline" or "a few weeks to a few months,"[74] leaving both to the interpretation of the SSA.  Likewise, the regulation does not make clear when the "clock starts" for the "few days to a few months" calculation.  Nor does the regulation provide any detail on how to navigate the borderline age situation beyond its explanation that adjudicators "will consider whether to use the older age category after evaluating the overall impact of all the factors of your case."  20 CFR 404.1563(b).  A review of the regulation

---

[70] *Wolfington v. Reconstructive Orthopaedic Assocs*. II PC, 935 F.3d 187, 204-05 (3d Cir. 2019) (cleaned up).

[71] SSR 17-2p, 2017 WL 3928306, at *1 (March 27, 2017).

[72] POMS Home, SSA Program Policy Information, https://secure.ssa.gov/apps10/poms.nsf/Home?readform (last accessed January 25, 2024).

[73] HALLEX I-1-0-1. Purpose.

[74] *Fontenot,* 661 F. App'x at 277.

and the Administration's sub-regulatory guidance reveals that its interpretations of the ambiguities in § 20 C.F.R. § 404.1563 are reasonable.

Flores appeals the Commissioner's decision that her case does not involve a borderline age situation because Flores had "already reached the higher age category and qualifie[d] for benefits."[75]  Flores argues that she should have been entitled to the benefit of non-mechanical application of the age categories associated with the borderline age situation.  But the regulation does not provide that, where a claimant could have a better outcome, the ALJ should find a borderline age situation and apply the older age category.  It merely provides that ALJs may engage in non-mechanical application where the claimant is in the "weeks to months" zone and the older age category application would result in a finding of disability.  HALLEX and POMS serve to explain the application of the regulation, not narrow it.  Other courts have concluded the same.[76]

Here, the ALJ explained that Flores had already attained 50 years' of age by the date of the decision (3/15/2023) and the date last insured (9/30/2024).  And Flores was already disabled and

---

[75] ECF No. 9-1 at 10-14.

[76] *Bidwell v. Comm'r, SSA*, No. 20-860, 2022 WL 4594191, at *7 (E.D. Tex. Aug. 31, 2022), *R.&R. adopted*, 2022 WL 4593081 (E.D. Tex. Sep. 29, 2022); *Teresa G.S. v. Comm'r Soc. Sec.*, No. 19-583, 2020 WL 230706, at *6 (S.D. Ill. Jan. 15, 2020) (citing HALLEX I-2-2-42) (where Plaintiff had been awarded SSI benefits but not DIB benefits based off her age classification, ALJ was not required to evaluate borderline age because "Plaintiff is simply asking for a more favorable onset date, and that alone is not enough."); *see also Wells v. Colvin*, No. 15-64, 2016 WL 5390935, at *3-5 (N.D. Mo. Sept. 27, 2016) (declining to extend the borderline age rule where the ALJ issued a partially favorable decision finding the plaintiff retained some capacity to work, and was therefore not disabled until she attained the age of 55, at which time the Grids directed a finding of disabled, and concluding the borderline age rule did not apply because plaintiff was not seeking to use it "to avoid a complete denial of benefits, but instead to permit her to have a more favorable onset date and expand the number of months for which she can receive retroactive benefits"); *Antal v. Berryhill*, No. 17-2097, 2018 WL 4038147, at *2-7 (M.D. Pa. July 26, 2018) (finding the borderline exception inapplicable to the case because it involved a successful disability claim), *R. & R. adopted*, 2018 WL 030694 (M.D. Pa. Aug. 23, 2018); *Kumanchik v. Astrue*, No. 11-141, 2012 WL 875448 (W.D. Pa. Mar. 14, 2012) (borderline exception did not apply where ALJ decision was issued when claimant had already reached the next age category); *Cleveland v. Saul*, No. 18-143, 2020 WL 1494075, at *6 (D. Mont. Mar. 27, 2020) (affirming Commissioner's decision where plaintiff did not seek the benefit of the borderline age rule to avoid a complete denial of benefits, but rather to receive a more favorable onset date and expand the amount of retroactive benefits he would receive, noting that "[t]his is not a proper use of the borderline age rule"); *Berg v. Berryhill*, No. 17-4452, 2019 WL 3387209, at *5 (E.D. Pa. July 26, 2019) ("Those few courts that have considered this precise issue have held that the borderline age analysis does not permit a claimant like Berg, who has received benefits under the Medical Vocational Guidelines, to rely upon the borderline rule to secure a more favorable onset date and expand the number of months for which she can receive retroactive benefits.") (cleaned up).

eligible for benefits by both dates, having been found disabled as of October 27, 2022.  As such, he rightfully determined, this was not a borderline age situation.  In doing so, the ALJ provided "more than a mere citation to a regulatory provision."[77]  He provided his reasoning for determining that a borderline age situation is not present—i.e., because Flores has already reached the higher age category and qualifies for benefits.  Rec. at 18.  ALJ Benedict explained that the "borderline age situation can be used to qualify an individual for disability benefits, but it cannot be used to grant *more benefits to an individual who already qualifie*s."  *Id*. (emphasis added).  This explanation, in keeping with HALLEX and POMS' explanations of a borderline age situation, is reasonable; claimants are not entitled to a "more favorable decision" than that already reached merely because their case involves a transition from one age category to another.

Moreover, even if Plaintiff were "within a few weeks or a few months" of age 50 on the date of adjudication (March 15, 2023) or date last insured (September, 2024), the analysis did not end there.  According to the regulations, if a claimant is a "younger person" under age 50, the Administration generally will not consider that her age will seriously affect her ability to adjust to other work, but in some circumstances, the Administration will consider that persons aged 45-49 are more limited in their ability to adjust to other work than persons who have not attained age 45.  20 C.F.R. § 404.1563(c).  In comparison, an individual "closely approaching advanced age" (i.e., 50-54 years' old) with a severe impairment(s) may be seriously affected in her ability to adjust to other work.  20 C.F.R. § 404.1563(d).  Limited work experience further erodes their ability to adjust.  *Id*.  Internal agency guidance used to require ALJs to consider "additional vocational adversities" that could justify the use of the higher age category. But newer internal guidelines do

---

[77] *Schofield*, 950 F.3d at 321 (citing *Salmond v. Berryhill*, 892 F.3d 812, 819 (5th Cir. 2018) ("A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." (quotation omitted)).

not require the claimant to show additional vocational adversities. *See Huigens v. Soc. Sec. Admin., Comm'r,* 718 F. App'x 841, 846 n.2 (11th Cir. 2017) (citation omitted). "Rather, an ALJ must only consider the overall impact of all the factors—RFC, age, education, and work experience—and any additional element(s) present that seriously affects a claimant's ability to adjust to other work."[78]

Though ALJ Benedict did not believe that a borderline age situation was present in this case, he went on to explain that, even if it were, use of the higher age category would not be supported because "the additional vocational adversities do not exist to support non-mechanical application of the closely-approaching-advanced-age category for a full six months." Rec. at 18. Although the ALJ used outdated language when referring to "additional vocational adversities" rather than the "overall impact of all the factors," the contents of the ALJ's analysis reflects application of the proper standard. He considered each of the relevant factors in addition to age—education, work experience, and RFC—in assessing whether to use the higher age category. The ALJ noted that Flores has a twelfth-grade education, was in a regular-education curriculum, has not been out of the workforce for an extended period of time prior to the amended alleged onset date (having last worked in 2020) or in the last fifteen years, and has no limitations that have a heightened effect on the sedentary occupational base identified in her RFC. Rec. at 18. The ALJ also noted the vocational expert's classification of Flores' past relevant work (baker's helper and nursery school attendant), which positions were not in isolated industries nor required unique skills, knowledge, or abilities. *Id.*

The ALJ correctly noted that Flores' case did not involve a "borderline age situation" because she was already found eligible for benefits and had already reached the next age category

---

[78] *Gregory v. Kijakazi*, No. 20-0149, 2021 WL 3415183, at *6 (E.D.N.C. July 12, 2021) (citing HALLEX I-2–2-42), *R. & R. adopted*, No. 20-149, 2021 WL 3412553 (E.D.N.C. Aug. 4, 2021); *see also* 20 C.F.R. § 404.1563(b).

by the time he made his decision.  He also heeded the regulation's directive to consider whether to use the older age category after evaluating the overall impact of all the factors in Flores' case.

## VI.    CONCLUSION

Contrary to Flores' arguments, the ALJ committed no reversible error at Steps 3 or 5. Although ALJ Benedict did not provide a detailed medical equivalence analysis at Step 3, his Step 4 and 5 explanations provided information sufficient to conclude that he performed a medical equivalence analysis and, based on substantial evidence, concluded that Flores did not medically equal Listings 3.02 A or B.  Flores' deference argument as to the Commissioner's reasonable interpretation of the ambiguous borderline age situation likewise fails.  The ALJ's decision that Flores was not disabled before October 27, 2022 was adequately supported by substantial evidence in an adequately developed record as a whole, and the ALJ applied the proper legal standards in evaluating the evidence.  Accordingly, the ALJ's decision should be affirmed.

## VII.    RECOMMENDATION

For the foregoing reasons,

**IT IS RECOMMENDED** that Flores' Motion for Summary Judgment (ECF No. 9) be **DENIED,** and that Claimant's Complaint be **DISMISSED WITH PREJUDICE.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by

the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[79]

      New Orleans, Louisiana, this ___26th___ day of January, 2024.


DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[79] *See* 28 U.S.C. § 636(b)(1)(C); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).